

CLERK, U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

THE DATE OF ENTRY IS ON
THE COURT'S DOCKET

**The following constitutes the ruling of the court and has the force and effect therein described.**

**Signed September 17, 2019**

*Mark X. Mullin*

**United States Bankruptcy Judge**

---

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | | |
|---|---|---|
| IN RE: | § | |
| | § | CASE NO. 18-41896-MXM |
| MICHAEL P. EVERHART AND | § | |
| MELISSA A. EVERHART, | § | |
| | § | CHAPTER 13 |
| DEBTORS. | § | |

**MEMORANDUM OPINION
AND ORDER REGARDING THE TRUSTEE'S OBJECTION
TO CONFIRMATION OF DEBTORS' CHAPTER 13 PLAN**
*[RELATES TO ECF NOS. 20 AND 43]*

Before the Court is confirmation of the Debtors' Plan.[1]  The Trustee[2] filed an Objection[3] to

confirmation asserting that the Debtors' Plan fails to satisfy the "disposable income" requirement of

11 U.S.C. § 1325(b)(1)(B).[4]  After considering the Plan, the Objection, the Trustee's Brief,[5] the

---

[1] *Amended Debtor's(s') Chapter 13 Plan* [ECF No. 20] (the "***Plan***") filed by Michael P. Everhart and Melissa A. Everhart ("***Debtors***").  *See also* Debtors Ex. 2 and Trustee Ex. A.

[2] Pam Bassel, Standing Chapter 13 Trustee (the "***Trustee***").

[3] *Trustee's Objection to Confirmation* [ECF No. 18], *Trustee's Amended Objection to Confirmation* [ECF No. 22], *Trustee's Second Amended Objection to Confirmation* [ECF No. 30], *Trustee's Third Amended Objection to Confirmation* [ECF No36], *Trustee's Fourth Amended Objection to Confirmation* [ECF No. 43] (together, the "***Objection***").

[4] In earlier versions of the Objection, the Trustee also asserted that the Plan violated the "best interest of creditors" test of § 1325(a)(4) and that the Plan did not meet the "good faith" requirements of § 1325(a)(3) & (7).  The Trustee, however, did not prosecute these objections during the hearing or address them in her post-hearing briefing.  To the extent these objections were not resolved by stipulation, the Court overrules them.

[5] *Trustee's Brief in Opposition to Confirmation of Chapter 13 Plan* [ECF No. 45] (the "***Trustee's Brief***").

Debtors' Response Brief,[6] the Trustee's Reply Brief,[7] the testimony of witnesses, the exhibits admitted into evidence, other pleadings filed in this case, and the arguments of counsel, the Court finds and concludes that the Trustee's Objection is sustained in part and overruled in part.

## I.    OVERVIEW

The Trustee asserts that "the Plan fails to meet the 'disposable income' requirements of 11 U.S.C. § 1325(b)(1)(B) since the Plan does not propose to pay all of the Debtors' disposable income for the applicable commitment period to the Debtors' unsecured creditors."[8]  The Debtors assert that the Plan should be amended to reduce their monthly disposable income to $234.15, resulting in a reduced unsecured creditors' pool of $14,049.00.[9]  The Trustee, on the other hand, argues that the Debtors' revised monthly disposable income calculation is understated by $1,994.47.  Specifically, the Trustee asserts that the following line-item expense deductions on the Debtors' amended Form 122C-2[10] are overstated by the following amounts:

|      |                                             |           |
|------|---------------------------------------------|-----------|
| i.   | Line 16 – Taxes:                            | $   246.92 |
| ii.  | Line 23 – Optional Telephone Expense:       | $     50.00 |
| iii. | Line 33A – Home Mortgage:                   | $1,053.45 |
| iv.  | Line 33B – Vehicle Payment:                 | $     23.54 |
| v.   | Line 43 – Special Circumstances Expenses:   | $   620.56[11] |
|      | Total overstatement of expenses             | $1,994.47 |

---

[6] *Debtors' Brief in Response to Trustee's Brief in Opposition to Confirmation of Chapter 13 Plan* [ECF No. 46] (the "**Debtor's Response Brief**").

[7] *Trustee's Reply Brief in Opposition to Confirmation of Chapter 13 Plan* [ECF No. 47] (the "**Trustee's Reply Brief**").

[8] ECF No. 43.

[9] *Official Form 122C-1 and 122C-2* [ECF No. 41], at 13, line 45.  *See also* Debtors' Ex. D and Trustee's Ex. 2; ECF 45, at 4.

[10] ECF No. 41.  *See also* Debtors' Ex. D and Trustee's Ex. 2.

[11] ECF No. 43, at 1, and ECF No. 45, at 4-5.

## II. FACTS

The Debtors filed bankruptcy on May 10, 2018.[12] The Debtors' original Form 122C-1[13] reveals that they are above-median income earners, and their original Form 122C-2[14] reflected that their monthly disposable income was $436.26, with a resulting unsecured creditors' pool of $26,175.60.[15] Both of those figures are carried over and reflected in the Debtors' Plan.

Shortly before the Plan confirmation hearing, however, the Debtors amended their Schedules I & J[16] and Forms 122C-1 and 122C-2,[17] asserting that their monthly disposable income should be reduced to $234.15.[18] This reduction in monthly income reduced the required unsecured creditors' pool to $14,049.00. In response to the Debtors' amended Form 122C-2,[19] the Trustee's Objection asserts that the Debtors' revised monthly disposable income figure should be increased by $1,994.47, with a corresponding increase in the required unsecured creditors' pool.[20]

The Debtors financed the purchase of their homestead (the "***Home***") over twelve years ago with a first-lien mortgage owed to Wells Fargo Home Mortgage and a second-lien mortgage owed to Citimortgage, both of which liens remain outstanding.[21] In addition, the Debtors own a 2005 Jeep Wrangler free and clear and a 2017 Jeep Grand Cherokee (the "***Vehicle***"), which is subject to an outstanding purchase-money lien held by Suntrust Bank.[22] Finally, the Debtors also list a 403(b)

---

[12] *Voluntary Petition for Individuals Filing for Bankruptcy* [ECF No. 1].

[13] *Id.* at 71-74.

[14] *Id.* at 75-82.

[15] *Id.* at 82. $436.26 x 60 months = $26,175.60.

[16] *Schedule I and Schedule J* [ECF No. 40]. *See also* Debtors' Ex. B and Trustee's Ex. 3.

[17] ECF No. 41; *see also* Debtors' Ex. D and Trustee's Ex. 2.

[18] ECF No. 41, at 13; *see also* Debtors' Ex. D and Trustee's Ex. 2.

[19] ECF No. 41; *see also* Debtors' Ex. D and Trustee's Ex. 2.

[20] ECF No. 43, at 1; ECF No. 45, at 5.

[21] ECF No. 1, at 9, 23-24; ECF No. 19, at 1.

[22] ECF No. 1, at 10, 23; ECF No. 19, at 1.2.

retirement account in the amount of $26,217.00 (the "**403(b) Retirement Account**"), but the Debtors' schedules do not list any outstanding loan associated with the 403(b) Retirement Account.[23]

## III. LEGAL ANALYSIS

As detailed in the Trustee's and the Debtors' extensive briefs,[24] the parties cite over sixty court opinions along with several other secondary sources to support their respective positions. Rather than diving into the maze of differing analyses performed by other courts and commentators, this Court will begin by reviewing the Bankruptcy Code sections relevant to the issues in dispute.[25]

## A. APPLICABLE BANKRUPTCY CODE SECTIONS

The Bankruptcy Code sections relevant in this dispute are §§ 1325(b), 707(b)(2)(A), and 707(b)(2)(B), all of which were enacted in 2005 as part of BAPCPA.[26]

### 1. 11 U.S.C. § 1325(b)

The analysis begins with § 1325(b)(1)(B), which provides:

> If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan— . . . (B) the plan provides that all of the debtor's projected *disposable income* to be received in the applicable commitment period . . . will be applied to make payments to unsecured creditors under the plan.[27]

Section 1325(b)(2) defines "disposable income" in relevant part as "current monthly income received by the debtor . . . less *amounts reasonably necessary to be expended* . . . for the maintenance or support of the debtor or a dependent of the debtor . . . ."[28] Section 1325(b)(3) then directs that, for

---

[23] ECF No. 1, at 12; ECF No. 19, at 4.

[24] The parties' briefs total over 60 pages of single-space type.

[25] *See, e.g.*, *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61, 69 (2011) (interpretation of the Bankruptcy Code starts "where all such inquiries must begin: with the language of the statute itself"); *U.S. v. Ron Pair Enter., Inc.*, 489 U.S. 235, 241 (1989) (same).

[26] Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), Pub. L. No. 109-8, 119 Stat. 23 (2005).

[27] 11 U.S.C. § 1325(b)(1)(B) (emphasis added).

[28] 11 U.S.C. § 1325(b)(2)(A)(i) (emphasis added).

above-median-income debtors, the "*amounts reasonably necessary to be expended* . . . shall be determined in accordance with subparagraphs (A) and (B) of section 707(b)(2)."[29] Therefore, § 1325(b)(3) incorporates the means test for determining the allowable expense deductions when calculating "disposable income" for above-median-income debtors.

### 2. 11 U.S.C. § 707(b)(2)(A)

Section 707(b)(2)(A) sets out the means test for presumed abuse in filing a Chapter 7 petition. The means test requires consideration of "the debtor's current monthly income reduced by the amounts determined under clauses (ii), (iii), and (iv), and multiplied by 60 . . . ."[30] Amounts determined under clause (ii) are set out in the IRS standards, whereas amounts determined under clause (iii) are payments on secured debts. Amounts determined under clause (iv) are expenses for priority claims, which are not relevant here. Read together, the amounts determined under clauses (ii), (iii), and (iv) "allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, *and also* any payments on secured debt that will come due in the sixty months after the petition date."[31] Each of these clauses authorizes a deduction as "a stand-alone expense."[32]

### i. *Clause (ii)*

Section 707(b)(2)(A)(ii)(I) provides, in pertinent part:

> The debtor's monthly expenses shall be the debtor's applicable monthly expense amounts specified under the National Standards and Local Standards, and the debtor's actual monthly expenses for the categories specified as Other Necessary Expenses issued by the Internal Revenue Service for the area in which the debtor resides, as in effect on the date of the order for relief, for the

---

[29] 11 U.S.C. § 1325(b)(3) (emphasis added).

[30] 11 U.S.C. § 707(b)(2)(A)(i).

[31] *Drummond v. Welsh (In re Welsh)*, 465 B.R. 843, 849 (9th Cir. BAP 2012) (emphasis added); *see 6 COLLIER ON BANKRUPTCY* ¶ 707.04[3] [c] at 8-9 (16th ed. 2019).

[32] *In re Welsh*, 465 B.R. at 849.

debtor . . . . Notwithstanding any other provision of this clause, the monthly expenses of the debtor shall not include any payments for debts.[33]

Section 707(b)(2)(A)(ii)(V) further provides, in pertinent part:

In addition, the debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards for housing and utilities issued by the Internal Revenue Service, based on the actual expenses for home energy costs if the debtor provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.[34]

The Debtors' potential monthly deductions under the means test that fall within § 707(b)(2)(A)(ii) are the Debtors' housing and utility expenses and the Debtors' vehicle ownership and operation expenses, all of which are covered in the "Local Standards"[35] issued by the IRS. In addition, the Debtors' actual monthly expenses for certain other expenses, including taxes and telephone expenses, are covered within the "Other Necessary Expenses"[36] issued by the IRS.

### ii. Clause (iii)

Section 707(b)(2)(A)(iii), on the other hand, provides in pertinent part:

The debtor's average monthly payments on account of *secured debts* shall be calculated as the sum of –

(I)     The total of all amounts scheduled as contractually due to secured creditors in each month of the 60 months following the date of the filing of the petition; and

(II)    Any additional payments to secured creditors necessary for the debtor, in filing a plan under chapter 13 of this title, to maintain possession of the debtor's . . . motor vehicle . . . necessary for the support of the debtor and the debtor's dependents, that serves as collateral for secured debts;

---

[33] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[34] 11 U.S.C. § 707(b)(2)(A)(ii)(V).

[35] The IRS Local Standards address a debtor's Housing and Utilities costs and Transportation costs. Transportation costs are then further divided between "Ownership costs" and "Operating costs."

[36] The Other Necessary Expenses include, among other categories of monthly expenses, a debtor's "Taxes" and "Optional telephones and telephone services."

divided by 60.[37]

The Debtors' potential deductions under the means test that fall within § 707(b)(2)(A)(iii) are the Debtors' "average monthly payments" on account of their Home mortgage debt and Vehicle secured debt.

### 3.  11 U.S.C. § 707(b)(2)(B)

The final Bankruptcy Code section relevant in this case is § 707(b)(2)(B), which provides in pertinent part:

> (i)  In any proceeding brought under this subsection, the presumption of abuse may only be rebutted by demonstrating special circumstances, such as a serious medical condition or a call or order to active duty in the Armed Forces, to the extent such special circumstances that justify additional expenses or adjustments of current monthly income for which there is no reasonable alternative.

> (ii)  In order to establish special circumstances, the debtor shall be required to itemize each additional expense or adjustment of income and to provide –

>> (I)  documentation for such expense or adjustment to income; and

>> (II)  a detailed explanation of the special circumstances that make such expenses or adjustment to income necessary and reasonable.

> (iii)  The debtor shall attest under oath to the accuracy of any information provided to demonstrate that additional expenses or adjustments to income are required.[38]

The Debtors' potential deductions under the means test that fall within § 707(b)(2)(B) are the Debtors' proposed Special Circumstances Expenses of $620.56, which include (a) a 403(b) loan payment of $154.65, (b) utilities and home insurance expenses that exceed the IRS standards by $384.91, and (c) monthly vehicle transportation costs that exceed the IRS standards by $81.00.

---

[37] 11 U.S.C. § 707(b)(2)(A)(iii) (emphasis added).

[38] 11 U.S.C. § 707(b)(2)(B).

The Court will address, in the order raised in the Objection,[39] each of the Trustee's specific objections to the Debtors' proposed deductions when calculating their "monthly disposable income" under § 1325(b)(2).

## B.     FORM 122C-2 LINE 16 – TAX WITHHOLDING

The Trustee contends that the Debtors overstate the monthly amount that they pay for federal, state, and local taxes on line 16 of Form 122C-2 by $246.92.  In support of the Objection, the Trustee contends that:

> the Debtors received a 2017 tax refund of $4,963.00 and did not testify to any facts or provide any documentary evidence that would support a conclusion that their tax refund will decrease in the future.  After reducing the Debtors' tax refund by the $2000.00 provided for in the General Order,[40] the Trustee divided the remaining $2963.00 by 12 resulting in the $246.92 add back to disposable income.[41]

The Debtors, on the other hand, contend that the $849.68 listed on line 16 of amended Form 122C-2[42] is the actual amount of the monthly tax withholding from their paychecks and that the same amount is also listed in their amended Schedule I.[43]  The Debtors further point out that Form 122C-2 states that "if you expect to receive a tax refund" then the Debtors must subtract the appropriate number from the amount listed on line 16 of Form 122C-2.

Ms. Everhart testified credibly that the Debtors do not expect to receive tax refunds in the future, in part because (i) in 2017 the Debtors had incurred medical expenses due to the birth of their child; and (ii) after the Debtors' meeting of creditors on June 25, 2018 and pursuant to the request of the Trustee's office, the Debtors reduced the amounts being withheld from their paychecks.  Ms.

---

[39] ECF No. 43.

[40] *See Standing Order Concerning all Chapter 13 Cases*, General Order 2017-10, ¶20, entered in the United States Bankruptcy Court for the Northern District of Texas (the "**General Order**").

[41] ECF No. 45, at 22.

[42] ECF No. 41, at 9, line 16; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[43] ECF No. 40, at 2, line 5a; *see also* Debtors' Ex. B, Trustee's Ex. 3.

Everhart's testimony is supported by the Debtors' amendments to their original Form 122C-2 and Schedule I and Trustee Ex 4.[44] The Debtors originally were withholding $1,249.69[45] monthly from their paychecks, but as listed on their amended Form 122C-2[46] and Schedule I,[47] the Debtors reduced that withholding down to $849.68.

Based on the evidence, the Court finds that the amount listed by the Debtors on line 16 of Form 122C-2 is reasonable and that the Trustee's Objection seeking an addback of $246.92 for over-withholding for taxes is overruled.[48]

## C.     FORM 122C-2 LINE 23 – OPTIONAL TELEPHONE EXPENSE

The Trustee contends that the Debtors are not entitled to the additional $50 monthly deduction taken on line 23 of Form 122C-2 for enhanced optional telephone services beyond the deduction allowed for basic telephone, cell phone, and internet services included in the Local Standards deduction provided on line 9a of Form 122C-2.[49]

The Debtors respond that they are entitled to the additional $50.00 deduction because such enhanced services are "necessary for . . . the production of income, if it is not reimbursed by your employer."[50]  Ms. Everhart testified credibly that her work requires that she have text messaging capability and other applications on her cell phone because she is required to be accessible throughout

---

[44] Trustee's Ex. 4 reflects a reduction of withholding of $404.65 per month (net pay in April 2018 of $2,799.81 compared to net pay in September 2018 of $3,204.56).

[45] ECF No. 1.

[46] ECF No. 41, at 9, line 16; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[47] ECF No. 40, at 2, line 5a; *see also* Debtors' Ex. B, Trustee's Ex. 3; Trustee's Ex. 4, at 2-3.

[48] On a side note, even if the Debtors do receive IRS tax refunds during the pendency of their case in the future, the procedures in place under paragraph 20 of the General Order provide that the Trustee may file a plan modification to capture any such excess tax refunds for the benefit of general unsecured creditors with allowed claims.

[49] The figure listed on line 9a of Form 122C-2 comes from the Local Standards tables for housing and utilities, which include a total allowed amount for "mortgage or rent, property taxes, interest, insurance, maintenance, repairs, gas, electric, water, hearing oil, garbage collection, *telephone, cell phone, internet, and cable*."  *See* I.R.M. § 5.15.1.8. (emphasis added).

[50] ECF No. 41, at 9, line 23; *see also* Debtors' Ex. D, Trustee's Ex. 2.

the entire school district. In addition, she testified credibly that Mr. Everhart is a computer systems integration administrator, and because his employer does not have a business office in the DFW area, he works from their Home. To adequately perform his job responsibilities, he requires higher internet speed, increased bandwidth, and greater storage capacity than is provided in basic cell and internet services. Without such enhanced services, Mr. Everhart would not be able to effectively perform his work responsibilities, which would jeopardize the job he has held for over 21 years.

Based on the evidence, the Court finds that the Debtors have proven that the additional $50 deduction on line 23 of Form 122C-2 is reasonable and necessary for "the production of [both Debtors'] income." Therefore, the Court finds that the Debtors' additional proposed monthly deduction of $50.00 on line 23 of Form 122C-2 for enhanced optional telephone and internet services is reasonable and appropriate, and the Trustee's Objection is overruled.

## D.    FORM 122C-2 LINE 33A – HOME MORTGAGE PAYMENT

The Trustee asserts that the Debtors' actual Home mortgage expense of $2,416.45[51] exceeds the applicable maximum mortgage expense of $1,363.00[52] authorized in the Local Standards. The Trustee contends, therefore, that the Debtors overstated their authorized Home mortgage payment on line 33a of Form 122C-2 by $1,053.45, requiring a corresponding addback to the Debtors' disposable income.[53]

The Trustee's objection raises a contested legal question regarding the proper application of § 707(b)(2)(A) when addressing a debtor's home and vehicle expenses. Although the legal question raised by the Trustee appears simple and straight forward—the answer, not so much. As detailed in

---

[51] ECF No. 41, at 7, lines 9b; at 11, line 33a; *see also* Debtors' Ex. D, Trustee's Ex. 2. The Debtors' total monthly payment of $2,416.45 is comprised of $1,327.37 to Wells Fargo Home Mortgage, $509.56 to Citimortgage, and $579.52 for ad valorem property taxes. *See* ECF No. 40, lines 4, 4a, and 5; *see also* Debtors' Ex. B and Trustee's Ex. 3.

[52] ECF No. 41, at 7, line 9a; ECF No. 45, at 5; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[53] ECF No. 43, at 1.

the Trustee's and the Debtors' extensive briefs, many courts have weighed in with a wide range of differing analyses and conclusions concerning the proper application of § 707(b)(2)(A) when addressing home and vehicle expenses and debt. In fact, this Court has recently weighed in on the debate concerning the proper application of § 707(b)(2)(A) to a vehicle expense and debt. Based on this Court's analysis in *Anderson*,[54] which the Court adopts here, the Court finds and concludes that the Trustee misconstrues § 707(b)(2)(A).

First, clause (ii) of § 707(b)(2)(A) specifically provides that debtors are entitled to deduct the "applicable monthly *expense* amounts specified under the . . . Local Standards."[55] But clause (ii) goes on to provide: "Notwithstanding any other provision of this clause, the monthly expenses of the debtor *shall not include any payments for debts*."[56] Therefore, the plain language of § 707(b)(2)(A)(ii)(I) specifically instructs that although debtors are allowed to deduct the "applicable monthly *expense* amounts specified" in the Local Standards tables, "*payments for debts*" must be deducted from such allowed expense amounts.[57]

Based on the facts in this case, under clause (ii), the Debtors are allowed to take the full home mortgage expense of $1,363.00 that is provided in the applicable Local Standards tables, but the Debtors are required to deduct their applicable "payments for debts," which in this case is $2,416.45, resulting in a net Home expense deduction of $0.00.

---

[54] *See In re Anderson*, Case No. 18-43360, *Memorandum Opinion and Order Sustaining in part and Overruling in part the Trustee's Objection to Confirmation of Debtors' Chapter 13 Plan* [ECF No. 13] (Bankr. N.D. Tex. Aug. 9, 2019).

[55] 11 U.S.C. § 707(b)(2)(A)(ii)(I) (emphasis added).

[56] *Id.*

[57] *See, e.g., Drummond v. Welsh (In re Welsh),* 465 B.R. 843, 849 (9th Cir. BAP 2011) (clauses (ii) and (iii) allow debtor to deduct expenses set out in Local Standards and also payments on secured debt); *In re Lopez*, 574 B.R. 149, 178-80 (Bankr. E.D. Cal. 2017) (no need to refer to the guidelines because the statute and Form 122C-2 are clear and unambiguous, debtor's monthly expenses shall be the amounts under the Local Standards after deducting the secured payment amount.); *In re Scott*, 457 B.R. 740, 744-48 (Bankr. S.D. Ill. 2011); *see also Lynch v. Jackson,* 853 F.3d 116, 121 (4th Cir. 2017) (plain language of the statute entitles debtor to deduct the full Local Standard amounts even if their actual expenses are less).

Next, the Trustee misapplies clause (iii) by arguing that the Debtors' mortgage debt payments applicable in clause (iii) should be limited to the maximum amount of mortgage expense allowed in the Local Standards under clause (ii). Instead, clause (iii), which specifically addresses a debtor's actual mortgage *debt* payments,[58] is separate and apart from the Local Standards *expense* deduction that applies in clause (ii). And as previously noted, the amounts determined under clauses (ii) and (iii) "allow a debtor to deduct from current monthly income those expenses set out in the IRS standards, *and also* any payments on secured debt that will come due in the sixty months after the petition date."[59]

The Trustee argues that the Supreme Court in *Ransom*[60] gave "clear support" for the proposition that a debtor's allowance is capped by the amounts listed in the Local Standard tables when the Supreme Court stated:

> Although the *expense* amounts in the Standards apply only if the debtor incurs the relevant *expense*, the debtor's out-of-pocket cost may well not control the amount of the deduction. If a debtor's actual *expenses* exceed the amounts listed in the tables, for example, the debtor may claim an allowance only for the specified sum, rather than for his real expenditures. (footnote omitted).[61]

The Trustee's reliance on *Ransom* is misplaced for at least two reasons. First, the Supreme Court made clear that the above hypothetical was dicta.[62] Second, and more importantly, the above hypothetical concerns only clause (ii) of § 707(b)(2)(A). This Court agrees with the above hypothetical—if a debtor's actual home or vehicle *expense* subject to clause (ii) of § 707(b)(2)(A) exceeds the amount listed in the Local Standards table, then the allowed *expense* deduction under

---

[58] *See* 11 U.S.C. § 707(b)(2)(A)(iii).

[59] *In re Welsh*, 465 B.R. at 849 (emphasis added); *see 6 COLLIER ON BANKRUPTCY* ¶ 707.04[3] [c] at 8-9 (16th ed. 2019).

[60] *Ransom v. FIA Card Services, N.A.*, 562 U.S. 61 (2011).

[61] *Id.* at 75 (emphasis added).

[62] *Id*. at 75 n. 8.

clause (ii) is limited to the specified sum in the table. Here, the Debtor's allowed expense deduction under clause (ii) is $0.00. The *Ransom* court did not address or provide a hypothetical for a debtor's allowed deduction for a debt payment subject to clause (iii) of § 707(b)(2)(A), which is the relevant Bankruptcy Code subsection in this case.

The Court's application of § 707(b)(2)(A) in *Anderson* and again here is supported by the clear instructions contained in Form 122C-2 itself. After BAPCPA was passed, the Judicial Conference of the United States[63] created Form B22C to assist practitioners in calculating disposable income. In 2015, the Judicial Conference updated the form as part of the Forms Modernization Project.[64] New Form 122C-2 was derived from the previous iterations of the form. Pursuant to Federal Rule of Bankruptcy Procedure 9009, "The Official Forms prescribed by the Judicial Conference of the United States shall be used without alteration, except as otherwise provided in these rules, in a particular Official Form, or in the national instructions for a particular Official Form."[65] And "the forms shall be construed to be consistent with these rules and the Code."[66]

The Court views Form 122C-2 as an advisory opinion on how to interpret § 707(b)(2)(A)(ii)(I) and 707(b)(2)(A)(iii). Form 122C-2, line 9a directs the Debtors to use the figure in the IRS Local Standard ($1,363.00).[67] Line 9b then directs the Debtors to subtract the average monthly mortgage payment for the Home ($2,416.46),[68] resulting in the Debtors' net mortgage *expense* deduction under

---

[63] The Judicial Conference of the United States is the principal policy making body concerning the administration of the United States Courts. It is comprised of the Chief Justice of the United States, the chief judge of each judicial circuit, the Chief Judge of the Court of International Trade, and a district judge from each regional judicial circuit. The Conference operates through a number of committees created to advise on a wide range of subjects, including rules of practice and procedure. The committee members are appointed by the Chief Justice. *See* https://www.uscourts.gov/about-federal-courts/governance-judicial-conference/about-judicial-conference (last visited Sept. 12, 2019). The Conference derives its authority from 28 U.S.C. § 331.

[64] The 2015 Judicial Conference Committee Notes associated with the development of Form 122C-2.

[65] FED. R. BANKR. P. 9009(a).

[66] FED. R. BANKR. P. 9009(c).

[67] ECF No. 41, at 7, line 9a; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[68] ECF No. 41, at 7, line 9b; *see also* Debtors' Ex. D, Trustee's Ex. 2.

clause (ii) in line 9c of ($0.00).[69]  Form 122C-2 then directs the Debtors to line 33a, where they are directed to add their average monthly mortgage *debt* payment back into the deduction calculation ($2,416.45).[70]  The Judicial Conference's approach to Form 122C-2 gives effect to the statute and supports the Court's plain-meaning interpretation of the statute.[71]

Based on the uncontroverted evidence, the Court finds that the Debtors' proposed deduction of $2,416.46 listed on line 33a of Form 122C-2 is correct, and the Trustee's Objection seeking an addback of $1,053.45 is overruled.

## E.    FORM 122C-2 LINE 33B – VEHICLE PAYMENT

As she did with her Objection to the Debtors' Home expense and mortgage, the Trustee asserts that the Debtors' Vehicle debt payment of $520.54[72] included on line 33b of Form 122C-2 exceeds the applicable maximum vehicle ownership *expense* of $497.00[73] authorized in the Local Standards. The Trustee concludes, therefore, that the Debtors overstated their authorized Vehicle debt payment deduction in line 33b of Form 122C-2 by $23.54,[74] requiring a corresponding addback to the Debtors' monthly disposable income.

The same analysis that applied above to the Debtors' Home mortgage debt deduction on Line 33 of Form 122C-2 applies also to the Debtors' Vehicle debt payment deduction on line 33b of Form 122C-2.  Based on the uncontroverted evidence before the Court and the same analysis detailed above,

---

[69]ECF No. 41, at 7, line 9c; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[70] ECF No. 41, at 11, line 33a; *see also* Debtors' Ex. D, Trustee's Ex. 2. Simply because line 33a of Form 122C-2 authorizes a deduction for the debtors' actual mortgage debt payment when calculating the debtors' "disposable net income" for purposes of § 1325(b)(2), does not necessarily establish that the proposed deduction may also overcome a "good faith" objection under § 1325(a)(3).  The Trustee did not raise such an objection, and based on the record, the Court finds in its discretion that the Debtors satisfied the "good faith" requirement of § 1325(a)(3).

[71] *See Lynch v. Jackson (In re Jackson)* 853 F.3d 116 (4th Cir. 2017) (the Official Form and the statute are harmonized).

[72] ECF No. 41, at 8, line 13b, 33b; *see also* Debtors' Ex. D, Trustee's Ex. 2. Ms. Everhart testified that the Vehicle's actual monthly debt payment is $632.00, but because the Vehicle will be paid off during the Plan, the balance owing as of the Debtors' bankruptcy filing divided by 60 months equals $520.54 per month.

[73] ECF No. 41, at 8, line 13a.

[74] ECF No. 43, at 1.

the Court finds and concludes that (a) the Debtors' vehicle expense deduction under § 707(b)(2)(A)(ii) is correctly reflected on line 13c of Form 122C-2 as $0.00, and (b) the Debtors' Vehicle debt deduction under clause § 707(b)(2)(A)(iii) is correctly reflected on line 33b of form 122C-2 as $520.54.[75]

Based on the uncontroverted evidence, the Court finds that the Debtors' proposed Vehicle debt deduction of $520.54 listed on line 33b of Form 122C-2 is correct, and the Trustee's Objection seeking an addback of $23.54 is overruled.

## F.    FORM 122C-2 LINE 43 – SPECIAL CIRCUMSTANCES EXPENSES

The Debtors seek to include in their calculation of disposable income certain "special circumstances" expense deductions on line 43 of Form 122C-2.[76] Specifically, the Debtors seek to deduct a total of $620.56 in additional monthly expenses for (i) repayment of a loan against a qualified 403(b) retirement account in the monthly amount of $154.65, (ii) overages on utilities in the monthly amount of $384.91, and (iii) excess vehicle transportation operating costs in the monthly amount of $81.00.[77] The Trustee argues that the Debtors have not met the requirements to take such deductions under § 707(b)(2)(B).

The Court must determine whether the Debtors have demonstrated "special circumstances" that permit them to take the deductions under § 707(b)(2)(B). Although the Bankruptcy Code does not define the term "special circumstances," courts generally agree that the determination of whether special circumstances exist should be decided on a case-by-case basis.[78] Courts are divided, however,

---

[75] ECF No. 41, at 11, line 33b; *see also* Debtors' Ex. D, Trustee's Ex. 2. Simply because line 33b of Form 122C-2 authorizes a deduction for the debtors' actual vehicle debt payment when calculating the debtors' "disposable net income" for purposes of § 1325(b)(2), does not necessarily establish that the proposed deduction may also overcome a "good faith" objection under § 1325(a)(3). The Trustee did not raise such an objection, and based on the record, the Court finds in its discretion that the Debtors satisfied the "good faith" requirement of § 1325(a)(3).

[76] ECF No. 41, at 12, line 43; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[77] ECF No. 41, at 12, line 43.

[78] *See, e.g., In re Davis,* 2011 WL 5884015 *4 (Bankr. N.D. Tex. 2011); *In re Pageau,* 383 B.R. 221, 226 (Bankr. D. N.H.

over what constitutes a special circumstance.[79]  Another judge of this Court previously addressed this issue by holding that:

> the determination whether a particular circumstance is special should be made on a case-by-case basis. . . . 707(b)(2)(B) leaves discretion with the court to account for differences between individual debtors.
>
> . . . .
>
>  . . . By way of example, in the case at hand, Debtors' rural location and choice of home impose higher costs that may be viewed as excessive; but the alternative of selling the property and moving somewhere less expensive might be significantly more costly than simply staying put and incurring the expenses.
>
> Additionally, following the language of section 707(b)(2)(B), the debtor must also properly document the deduction, prove there is no reasonable alternative and provide an explanation of the circumstances making the deduction necessary and reasonable.[80]

Accordingly, the Court will determine if the Debtors have proven that each of the deductions relates to special circumstances that are reasonable and necessary with no reasonable alternative.

### 1.  403(b) Loan Repayment

Ms. Everhart testified that she earned the qualified 403(b) Retirement Account when she worked for another school district.  Prior to moving to her present employer, she obtained a loan against the 403(b) Retirement Account.  On their Schedule J, the Debtors listed a monthly loan payment of $154.65 related to the 403(b) Retirement Account.[81]  Ms. Everhart further testified that if the Debtors were to cease making the loan payments, the Debtors would incur a significant financial tax penalty for an early withdrawal.  In addition, Ms. Everhart testified that the Debtors have worked

---

2008); *In re Knight,* 370 B.R. 429, 438 (Bankr. N.D. Ga. 2007).

[79] *See, e.g., In re Davis,* 2011 WL 5884015 at *4; *In re Pageau,* 383 B.R. at 226; *In re Knight,* 370 B.R. at 438; *In re Hammock*, 436 B.R. 343, 354 (Bankr. E.D.N.C. 2010).

[80] *In re Davis,* 2011 WL 5884015 at *5-6.

[81] ECF No. 40, at 5, line 17c; *see also* Debtors' Ex. B, Trustee's Ex. 3.  Ms. Everhart testified that the actual monthly loan payment for the 403(b) Retirement Account loan is 167.00, but because the loan will be paid off during the Plan, the balance owing as of the Debtors' bankruptcy filing divided by 60 months equals $154.65 per month.

to reduce their actual monthly expenses to compensate for the loan payment and that they do not have any other reasonable alternative setoff in lieu of taking the special circumstance deduction for the 403(b) Retirement Account loan payment.

The Trustee conceded in her Trustee Reply Brief that "with regards to the 403(b) Loan Repayment, the Trustee would not have opposed this deduction if it were simply documented" and that "the Debtors still have not provided any documentation at all" concerning the 403(b) Retirement Account and loan.[82]

Based on the evidence, the Court sustains in part and overrules in part the Trustee's Objection. The Court finds that Ms. Everhart's testimony was credible concerning the 403(b) Retirement Account loan, so the Court approves the monthly deduction of $154.65 for the loan as a special circumstance deduction under line 43 of Form 122C-2, subject to the Debtors' providing reasonable documentation related to the 403(b) Retirement Account and loan to the Trustee.  Therefore, before the Debtors' Plan may be confirmed, the Debtors must provide reasonable documentation requested by the Trustee related to the 403(b) Retirement Account and loan.

### 2.  Home Insurance and Utilities

The Debtors request a second "special circumstances" expense deduction in the amount of $384.91[83] for their actual monthly housing and utilities expenses in excess of the $706.00[84] authorized on the Local Standards tables.  Section 707(b)(2)(A)(ii)(V) provides, in part:

> [A] debtor's monthly expenses may include an allowance for housing and utilities, in excess of the allowance specified by the Local Standards . . . issued by the Internal Revenue Service . . . if the debtor

---

[82] ECF No. 47, at 4-5.

[83] ECF No. 41, at 12, line 43; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[84] ECF No. 41, at 7, line 8; *see also* Debtors' Ex. D, Trustee's Ex. 2.

provides documentation of such actual expenses and demonstrates that such actual expenses are reasonable and necessary.[85]

Ms. Everhart testified that the following amounts listed on their Schedule J are the Debtors' estimated actual monthly expenses for the following items that come within the home utilities and insurance categories within the Local Standards:

| | |
|---|---|
| Home insurance | $193.91[86] |
| Home maintenance, repair, and upkeep | $185.00[87] |
| Electricity, heat, natural gas | $281.00[88] |
| Water, sewer, garbage collection | $115.00[89] |
| Telephone, internet, cable | $178.00[90] |
| Cell phone | $138.00[91] |
| | |
| Total | $1,090.91 |
| <less – Form 122C-2, line 8> | <$706.00>[92] |
| | |
| Requested deduction | $384.91[93] |

The Trustee's principal objection at the hearing was to the Debtors' $60.00 bi-weekly lawn mowing service (approximately $120.00 per month) included within the Debtors' actual home maintenance and upkeep budget. The Debtors live on a one-acre lot, so the bi-weekly charges appear reasonable at first glance. However, Ms. Everhart admitted that in the past, Mr. Everhart used to mow their lawn until their lawn equipment broke down. She also admitted that, but for their lack of a working lawn mower and edger, there was no other reason why the Debtors could not mow their

---

[85] 11 U.S.C. § 707(b)(2)(A)(ii)(V).

[86] ECF No. 40, at 4, line 4b; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[87] ECF No. 40, at 4, line 4c; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[88] ECF No. 40, at 4, line 6a; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[89] ECF No. 40, at 4, line 6b; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[90] ECF No. 40, at 4, line 6c; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[91] ECF No. 40, at 4, line 4d ($188.00 less $50.00 already taken on line 23 on Form 122C-2); *see also* Debtors' Ex. B, Trustee's Ex. 3.

[92] ECF No. 41, at 7, line 8; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[93] ECF No. 41, at 12, line 43; *see also* Debtors' Ex. D, Trustee's Ex. 2.

own lawn. Therefore, the Debtors have failed to prove that they did not have a reasonable alternative to the requested "special circumstances" deduction. Therefore, the Court sustains the Trustee's Objection to the Debtors' request for a "special circumstances" deduction of $120.00 per month relating to their lawn maintenance.

As to the other "special circumstances" deductions of $264.91 for overages on utilities and home insurance under line 43 of Form 122C-2, the Court finds that Ms. Everhart's testimony proved that the deductions were reasonable and necessary and that the Debtors had no other reasonable alternatives to the requested deductions. Therefore, the Court overrules the Trustee's Objection to these "special circumstances" deductions.

To summarize, based on the evidence, the Court sustains in part and overrules in part the Trustee's Objection. The Court sustains the Trustee's Objection in the amount of $120.00, but overrules the Trustee's Objection as to the remaining deductions sought by the Debtors for overages on utilities and home insurance on line 43 of Form 122C-2. Therefore, the Court approves a "special circumstances" deduction included on line 43 of Form 122C-2 in the amount of $264.91.

### 3. Additional Vehicle Operational Expenses

The Debtors' third requested "special circumstances" expense deduction is $81.00[94] for their actual monthly vehicle transportation and maintenance expenses that exceed the $504.00[95] authorized on the Local Standards tables. The Debtors claim an additional $81.00 Transportation (Maintenance/Fuel/Insurance) cost above the IRS Standard.

Ms. Everhart testified that they live in a rural setting and that to obtain groceries, clothing, household goods, and other customary items, they must travel up to fifteen miles and sometimes as great as thirty miles one-way. Ms. Everhart further testified that Mr. Everhart's 2005 Jeep Wrangler

---

[94] ECF No. 41, at 12, line 43; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[95] ECF No. 41, at 7, line 12; *see also* Debtors' Ex. D, Trustee's Ex. 2.

requires maintenance that a newer vehicle would not ordinarily require. In addition, Ms. Everhart testified credibly that the following amounts listed on Schedule J are the Debtors' estimated monthly expenses for the following items that are included within the vehicle operation expenses of the Local Standards:

| | |
|---|---|
| Transportation, gas, and maintenance | $425.00[96] |
| Vehicle Insurance | $160.00[97] |
| | |
| Total | $585.00 |
| <less – Form 122C-2, line 12> | <$504.00>[98] |
| | |
| Requested deduction | $81.00[99] |

Based on the evidence, the Court finds that the Debtors have proven that the additional $81.00 deduction on line 43 of Form 122C-2 is reasonable and necessary and that the Debtors have no other reasonable alternatives to the requested "special circumstances" deduction. Therefore, the Court finds that Debtors' requested monthly deduction of $81.00 on line 43 of Form 122C-2 is approved, and the Trustee's Objection is overruled.

## IV. CONCLUSION

As previously noted, the parties' briefs in this dispute were extensive, and many courts have weighed in with a wide range of differing analyses and conclusions. This Court has fully considered and analyzed the Trustee's position and the contrary conclusions reached by other courts. For the reasons stated herein, the Plan as filed is not confirmed. The Plan will be confirmed, however, if the Debtors (i) produce the documents requested by the Trustee regarding the 403(b) Retirement Account and loan; and (ii) add back $120.00 to line 43 of Form 122C-2.[100]

---

[96] ECF No. 40, at 5, line 12; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[97] ECF No. 40, at 5, line 15c; *see also* Debtors' Ex. B, Trustee's Ex. 3.

[98] ECF No. 41, at 7, line 12; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[99] ECF No. 41, at 12, line 43; *see also* Debtors' Ex. D, Trustee's Ex. 2.

[100] ECF No. 41; *see also* Debtors' Ex. D and Trustee's Ex. 2.

Therefore, based on the Court's findings of fact and conclusions of law, it is hereby—

**ORDERED, ADJUDGED, AND DECREED** that the Trustee's Objection is **SUSTAINED** in part and **OVERRULED** in part as detailed herein; and it is further

**ORDERED** that if the Debtors satisfy the requirements set forth herein, then a separate order shall be entered confirming the Debtors' Plan, as modified by this Order.